IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL NO. H-11-722 |
| | § | |
| ABRAHAM MOSES FISCH | § | |

**MEMORANDUM AND OPINION**

Defendant Abraham Moses Fisch seeks an evidentiary hearing on whether the government had probable cause to file a *lis pendens* on his real property in order to show that the *lis pendens* must be released to allow him access to money to pay for a lawyer of his choice. After thorough consideration of the arguments Fisch presented in his motion, submissions, and during a number of hearings on the issues; the government's response; Fisch's *in camera* submissions; and the relevant law, the court denies Fisch's request for a hearing and denies the motion. The reasons are explained below.

**I.    Background**

In October 2011, the government obtained an indictment charging Fisch with conspiracy under 18 U.S.C. § 371, obstruction of justice under 18 U.S.C. § 1503, money-laundering conspiracy under 18 U.S.C. § 1956(h), money laundering under 18 U.S.C. §§ 1957, 2, and failure to timely file a tax return under 26 U.S.C. § 7203. That indictment included a notice of criminal forfeiture, which identified Fisch's home as forfeitable under 18 U.S.C. § 981 and 28 U.S.C. § 2461 as proceeds traceable to the conspiracy, obstruction of justice, money-laundering conspiracy, and money laundering counts. Later that same month, the government recorded a *lis pendens* in Harris County on that property.

Fisch, who is an experienced criminal-defense lawyer, retained a lawyer to represent him. That lawyer withdrew in May 2013 after the government obtained a superceding indictment that the lawyer believed created a conflict of interest. Fisch wants to choose another lawyer. He argues that the *lis pendens* significantly curtails his right to choose counsel and violates the Sixth Amendment. The government responds that the *lis pendens* does not affect Fisch's Fifth and Sixth Amendment rights for the reasons explained in *United States v. Register,* 182 F.3d 820 (11th Cir. 1999). The government also argues that Fisch has not shown that his financial status warrants granting the evidentiary hearing he seeks or lifting the *lis pendens*.

The Civil Asset Forfeiture Reform Act of 2000 governs federal civil forfeiture proceedings. Pub. L. No. 106–185, 114 Stat. 202 (2000) ("CAFRA"). Although 18 U.S.C. § 981 authorizes only civil forfeitures, 28 U.S.C. § 2461(c) makes property forfeitable under the civil-forfeiture statute subject to criminal forfeiture as well. *United States v. Parrett*, 530 F.3d 422, 425 n.2 (6th Cir. 2008) (citing 28 U.S.C. § 2461(c)); *United States v. Capoccia*, 503 F.3d 103, 115 (2d Cir. 2007) (Sotomayor, J.)). Under 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation" of various sections of Title 18 of the United States Code "or any offense constituting 'specified unlawful activity' [as defined in 18 U.S.C §1956(c)(7)] or a conspiracy to commit such offense" is subject to forfeiture. The government obtained an indictment containing a notice of criminal forfeiture for the counts relating to conspiracy, obstruction of justice, money-laundering conspiracy, and money laundering under 18 U.S.C. § 981 and 28 U.S.C. § 2461(c). The questions are whether, based on the record, the *lis pendens* on Fisch's property violates his Sixth Amendment right to choose counsel and requires that he be afforded a pretrial hearing contesting the *lis pendens* and, if so, what that hearing would involve. The threshold question is whether Fisch has satisfied the requirements that entitle him to an evidentiary hearing. "The Sixth Amendment to the Constitution guarantees that '[i]n all

criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense.'" *Wheat v. United States*, 486 U.S. 153, 158 (1988). "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* at 159 (citing *Morris v. Slappy*, 461 U.S. 1 (1983); *Jones v. Barnes*, 463 U.S. 745 (1983)). The right to choose counsel is not as robust as the right to counsel; "the right to choose counsel is circumscribed in several important respects." *Id.*

"[A] defendant may not insist on representation by an attorney he cannot afford." *Id.* "[T]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom the defendant can afford to hire[.]" *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989). There is "no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that defendant will be able to retain the attorney of choice." *Id.* at 626. "A robbery suspect, for example, has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended." *Id.* "[W]hen a defendant claims that he has suffered some substantial impairment of his Sixth Amendment rights by virtue of the seizure or forfeiture of assets in his possession, such a complaint is no more than the reflection of the harsh reality that the quality of a criminal defendant's representation frequently may turn on his ability to retain the best counsel money can buy." *Id.* 630 (citations omitted). "[N]either the Fifth nor the Sixth Amendment to the Constitution requires Congress to permit a defendant to use assets adjudged to be forfeitable to pay that defendant's legal fees." *United States v. Monsanto*, 491 U.S. 600, 614 (1989) (citing *Caplin & Drysdale*, 491 U.S. at 617)).

In *Monsanto*, a companion case to *Caplin & Drysdale*, the Supreme Court held that a

3

defendant's property may be restrained pretrial "based on a finding of probable cause to believe that the assets are forfeitable." *Id*. at 615. In that case, however, the Supreme Court was reviewing a pretrial restraint of assets following a hearing the Second Circuit required the district court to hold in that case. The Supreme Court expressly declined to consider "whether the Due Process Clause requires a hearing before a pretrial restraining order can be imposed" or whether the hearing that the Second Circuit required "was an adequate one." *Id.* at 615 n. 10. The Fifth Circuit has answered those questions.

"[W]hen the Government is seeking forfeiture and secures an indictment to that effect based on probable cause, a court may issue a restraining order without prior notice or a hearing." *United States v. Holy Land Found. for Relief and Dev.*, 493 F.3d 469, 475 (5th Cir. 2007) (en banc). "In some cases, however, due process will require that the district court then promptly hold a hearing at which the property owner can contest the restraining order, without waiting until trial to do so." *Id.* Aligning itself with the majority of other circuits, the Fifth Circuit, sitting en banc, adopted the "time-honored test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine when a hearing is required." *Id.* (citing *United States v. Jones*, 160 F.3d 641, 645–48 (10th Cir. 1998); *United States v. Monsanto*, 924 F.2d 1186, 1193–98 (2d Cir. 1991)*, on remand from* 491 U.S. 600 (1989); *United States v. Moya-Gomez*, 860 F.2d 706, 729–30 (7th Cir. 1988); *United States v. Harvey*, 814 F.2d 905, 928–29 (4th Cir. 1987), *superceded as to other issues*, *In re Forfeiture Hearing As to Caplin & Drysdale, Chartered*, 837 F.2d 537 (4th Cir. 1988) (en banc), *aff'd*, 491 U.S. 617 (1989)). Under that test, the court considers three factors when deciding whether the defendant is entitled to a hearing: "the private interest that will be affected by the restraint; the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the burdens that the hearing would entail." *Id.* "[C]ircuits employing this test have found that a property

4

owner's interest is particularly great when he or she needs the *restrained assets* to pay for legal defense on associated criminal charges, or to cover ordinary and reasonable living expenses." *Id.* (emphasis added) (citing *United States v. Melrose East Subdivision*, 357 F.3d 493, 499–500 (5th Cir. 2004) (collecting cases)).

      **A.**    **Whether *Lis Pendens* Is a Pretrial Restraint**

Fisch's motion and argument raise but do not discuss the threshold question of whether recording a *lis pendens* is the type of pretrial restraint that triggers *Mathews* review. *See id.* Under Texas law, the holder of property encumbered by a *lis pendens* can still sell, occupy, or rent that property. *Lis pendens* "'refer[s] a purchaser *pendente lite* to the record of the case, to affect him with notice of the issues in the suit.'" *State v. Silver Chevrolet Pickup*, 140 S.W.3d 691, 694 (Tex. 2004) (quoting *Elder v. Craddock*, 223 S.W. 314, 315 (Tex. App.—Austin 1920, writ dism'd w.o.j.)). "A *lis pendens* notice protects the party with the claim against the real property . . . , innocent purchasers, and those who take a security interest in the property." *Id.* "Notably, the purpose behind the *lis pendens* provision does not suggest that the Legislature intended to confer rights upon the person whose property is the subject of [a] forfeiture proceeding." *Id.* The Texas Property Code makes clear that "[a] recorded *lis pendens* is notice to the world of its contents. The notice is effective from the time it is filed for record and indexed . . . , regardless of whether service has been made on the parties to the proceeding." TEX. PROP. CODE § 13.004. The Fifth Circuit has stated that "the *lis pendens* doctrine provides that one acquiring an interest in property the subject of a lawsuit takes interest subject to the parties' rights as finally determined by the court." *Hamman v. Southwestern Gas Pipeline, Inc.*, 821 F.2d 299, 304 (5th Cir.), *vac'd in part on other grounds*, 832 F.2d 55 (5th Cir. 1987). Under the Texas Property Code, a *lis pendens* neither legally confers rights on the property owner nor restricts his rights. Instead, the *lis pendens* provides notice to the world that a person or entity is claiming an interest in the property.

The Eleventh Circuit has stated that the "filing of a *lis pendens* pursuant to state statute does not constitute a 'seizure' and does not affect property interests to an extent significant enough to implicate the Due Process Clause of the Fifth Amendment." *United States v. Register*, 182 F.3d 820, 837 (11th Cir. 1999). In that case, the defendant argued that he could not retain counsel of his choice, in violation of the Sixth Amendment, because the government filed a notice of *lis pendens* on his only assets. The Eleventh Circuit held that the *lis pendens* did not curtail the defendant's Sixth Amendment rights. The Eleventh Circuit reasoned that a notice of *lis pendens* affects "only one incident of ownership—alienability—whereas other methods of securing potentially forfeitable property are significantly more restrictive." *Id.* at 836 (citing *United States v. James Daniel Good Real Property*, 510 U.S. 43, 54 (1993)). As an example of a more restrictive method, the court noted that an outright seizure deprives the interest-holder of "'valuable rights of ownership, including the right of sale, the right of occupancy, the right to unrestricted use and enjoyment, and the right to receive rents'" and leaves only the "'right to bring a claim for the return of title.'" *Id.* (quoting *Good*, 510 U.S. at 54). Because a *lis pendens* affected only one incident of ownership and was a less severe restriction than outright seizure, the *Register* court concluded that *lis pendens* does not affect the Fifth Amendment Due Process Clause. The defendant therefore had no right to a pretrial hearing to "contest the legitimacy of the government's claim to his personal property under the criminal forfeiture statute." *Id.*

Other lower courts, relying on *Register*, have found that recording a *lis pendens* on real property is not a seizure that implicates the Due Process Clause of the Fifth Amendment or that legally interferes with the Sixth Amendment right to choose counsel. *See, e.g.*, *United States v. Jewell*, 538 F. Supp. 2d 1087, 1094 (E.D. Ark. 2008) ("It is of course true that a prospective buyer or mortgagee who knows that the government is seeking forfeiture of the property is unlikely to engage in the transaction, but that fact does not mean that the government is prohibited from giving

notice, constructive or otherwise, of its claim."); *United States v. Borne*, No. Crim. A. 03-0247, 2003 WL 22836059, at *3 (E.D. La. Nov. 25, 2003) ("The effect of *lis pendens* is constraining and for all practical purposes, it would be difficult to sell or mortgage the property [but] the right to alienate the property still exists [and] is not a seizure [that] implicate[s] the Due Process Clause of the Fifth Amendment"); United *States v. St. Pierre*, 950 F. Supp. 334, 338 (M.D. Fl. 1996) ("[G]overnment's filing of a notice of *lis pendens* does not restrain or otherwise enjoin Defendants from selling [their property]. Defendants therefore cannot show that they are financially unable to retain counsel of their choice on these grounds.").

At least one other circuit court, however, has found *Register*'s reasoning unpersuasive. *See Pater v. City of Casper*, 646 F.3d 1290, 1297 (10th Cir. 2011). First, the *Register* court did not consider *Connecticut v. Doehr*, 501 U.S. 1 (1991). *Pater*, 646 F.3d at 1297. In *Doehr*, the Supreme Court noted that "even the temporary or partial impairments to property rights that attachments, liens, and similar encumbrances entail are sufficient to merit due process protection." 501 U.S. at 12. The Tenth Circuit noted that the Second Circuit cited *Doehr* in characterizing a *lis pendens* as a similar encumbrance that warrants due-process protection. *Pater*, 646 F.3d at 1297 (citing *Diaz v. Paterson*, 547 F.3d 88, 95–96 (2d Cir. 2008)). The Tenth Circuit adopted the Second Circuit's reasoning. *Id*. The *Register* court failed to consider whether the restraint on alienation caused by the *lis pendens* affected Sixth-Amendment rights in a way that warrants a pretrial hearing.

Second, the *Register* court relied on a case describing the effect of a *lis pendens* on property rights in analyzing a takings claim to reach conclusions about whether the *lis pendens* affected Sixth Amendment rights and claims. *See id.* (quoting *Register*, 182 F.3d at 836 (citing *Kirby Forest Indus. v. United States*, 467 U.S. 1 (1984))). "[T]he standards for a procedural due process claim and a takings claim are not the same." *Id.* (citations omitted). Though, as *Register* indicated, a *lis pendens* is not a seizure because of the other incidents of property ownership that remain unaffected, it

7

remains a partial restraint on the alienability of property, which affects the defendant's ability to retain counsel. That restraint could impair the Sixth Amendment in a way that warrants some due-process protection. The *Monsanto* line of cases in every other circuit discusses the issue in terms of pretrial *restraints* or orders restraining the transfer of property, not pretrial *seizures* of property.

This court assumes that the government's recording of a *lis pendens* was a postindictment, pretrial restraint of property because, as the Tenth Circuit and others have found, a *lis pendens* restrains the sale of the property in much the same way as a court-issued restraining order would. *See Holy Land,* 493 F.3d at 475 (noting that "a property owner's interest is particularly great when he . . . needs the restrained assets to pay for legal defense"). The Fifth Circuit's *lis pendens* analysis also supports that conclusion: the "effect of a *lis pendens* on the owner of property . . . is constraining." *Beefy King Int'l, Inc. v. Veigle*, 464 F.2d 1102, 1104 (5th Cir. 1972) (per curiam) (analyzing *lis pendens* under Florida statute). The Fifth Circuit has recognized that for "all practical purposes, it would be virtually impossible to sell or mortgage the property because the interest of a purchaser or mortgagee would be subject to the eventual outcome" of a judicial proceeding." *Id*. While the *right* to alienate the property still exists, *see Chrysler Corp. v. Fedders Corp.*, 670 F.2d 1316, 1323 (3d Cir. 1982), that may not help a defendant seeking funds to pay counsel because a "notice of *lis pendens*, especially one filed by the United States of America, practically speaking, denudes the subject property of its alienability." *United States v. Kramer,* No. 1:06-cr-200-ENV-CLP, 2006 WL 3545026, at *10 (E.D.N.Y. Dec. 8, 2010).

**B.     Whether Fisch Is Entitled to a Hearing to Contest the Pretrial Restraint**

The first step under *Holy Land* is to consider the private interest that will be affected by the restraint. 493 F.3d at 425. Fisch argues that the *lis pendens* curtails his right to choose counsel. "Due process does not automatically require a hearing and a defendant may not simply ask for one." *United States v. Jones*, 160 F.3d 641, 648 (10th Cir. 1998). The Fifth Circuit has recognized that

"due process requires the district court to hold a prompt hearing at which the property owner can contest the restraining order – without waiting until trial to do so – at least when the restrained assets are needed to pay for an attorney to defend him on associated criminal charges." *Melrose*, 357 F.3d at 499 (citing *Jones*, 150 F.3d at 645–48). "As a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets other than those restrained, with which to retain private counsel and provide for herself and her family." *Jones*, 160 F.3d at 648. While a defendant's right to choose his counsel under the Sixth Amendment is a significant private interest under the *Mathews* test, "[t]his private interest would be absent if [Fisch] possessed the means to hire an attorney independently of assets that were seized." *United States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001). "If a defendant does not make such a threshold showing of need to use wrongly seized assets to pay his attorneys, 'then the private interest of the *Mathews* calculus drops out of the picture, tipping the balance of interests against a post-restraint hearing.'" *Id.* (quoting *Jones*, 160 F.3d at 647). "In sum, a defendant must 'show a bona fide need to utilize [restrained] assets . . . to conduct his defense' in order to be entitled to a hearing." *Id.* (quoting *United States v. Kirschenbaum*, 156 F.3d 784, 792 (7th Cir. 1998)).

The Fifth Circuit has declined to "elaborate the precise details of the circumstances and showings necessary to trigger a due process hearing." *Melrose*, 357 F.3d at n. 5. Most courts require two threshold showings: "due process requires a pretrial adversary hearing when a defendant claims that a portion of the assets restrained . . . are untainted and that he has no other funds from which to secure the counsel of choice." *United States v. Farmer*, 274 F.3d 800, 803 (4th Cir. 2001) (citations omitted). That is, the defendant must make a *prima facie*, threshold showing that he needs the assets and that the government lacked probable cause to restrain the assets. *See United States v. Farmer*, 274 F.3d 800, 805 (4th Cir. 2001). The Second Circuit recently rejected this second threshold showing and has held that a defendant must only make the threshold financial showing that

9

"he or she does not have sufficient alternative assets to fund counsel fo choice." *United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013). Under either of these approaches, before he is entitled to the evidentiary hearing he seeks on probable cause to issue the restraint, Fisch must show that he does not have sufficient alternative assets to pay for his counsel of choice. "This requires more than a mere recitation; the defendant must make a sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets to fund counsel of choice." *Bonventre*, 720 F.3d at 132.

After a number of opportunities to comply with this requirement, and an extended period in which to do so, Fisch has submitted for *in camera* review, under seal, a very brief statement with no supporting documents. He asserts that there are three attorneys he would consider hiring and that they estimate the cost of his defense as between $250,000 and $500,000. Fisch provides only a bare-bones and conclusory description of these estimated fees. Fisch also stated that he intended his submission to fulfill the court's orders that he show his inability to pay for counsel using assets other than the encumbered property. Fisch's *in camera* submission is scant, conclusory, and insufficient. The court respects Fisch's wish that his financial information be under seal but notes that he lists assets that he estimates as worth close to $200,000. Even this list is woefully incomplete. He does not indicate whether his law practice has continued or generates income. He has not disclosed his net worth, described his current living expenses, or explained how he has been paying for his living expenses. While Fisch has provided a short list of accounts, assets, and cash, he has not stated whether he has any other financial accounts or assets, and if so, their value.

The court clearly ordered, on more than one occasion, that Fisch submit under seal sufficient information about his assets and financial circumstances so that the court could make the determination the case law requires. Fisch has failed to satisfy the threshold requirement for a hearing. He has provided wholly insufficient information to show that he needs the restrained asset to pay for his legal defense and to cover ordinary and reasonable living expenses.

It is instructive to compare the information Fisch submitted to the information the defendant in *Boventre* submitted for the same purpose, to show inability to pay for counsel without access to the restrained assets. The information Fisch submitted is far less than the defendant submitted in *Boventre*. In that case, the Second Circuit affirmed the district court's decision that Boventre failed to meet the threshold requirement for a hearing. The defendant had:

> filed two supporting affidavits. The first, a two page declaration, noted that he was unemployed and that his assets consisted of (1) a monthly social security check for $1,835; (2) pre-inheritance gifts from his mother totaling $225,000; (3) pre-inheritance gifts from his father of two bonds bought in 1992 for $30,000; (4) a house owned jointly with his stepson; and (5) household items, including a piano and a painting. Second, a barely three page declaration, reported that (1) his monthly social security check had been reduced to $1,710; (2) he continued to own the bonds, piano, and painting; and (3) the jointly owned house had been sold, netting him $100,000 in proceeds, which he had since spent. Boventre stated that his monthly expenses (mortgage, taxes, utilities, and maintenance fees) for two pieces of forfeitable real property identified in the indictment and Second Amended Complaint totaled approximately $14,700 per month and that his expenses for those properties totaled approximately $175,000 in the preceding year. He also noted that his remaining expenses totaled approximately $22,000 annually and that the aggregate balance of other accounts which the government had stated were not the subject of seizure warrants . . . was $121,000. Boventre's attorney estimated that the cost of the criminal defense would likely reach $2.5 to $3 million, and the government acknowledged that the amount in the restrained accounts was $3.9 million.

*Boventre*, 720 F.3d at 133. This was an insufficient showing because:

> Boventre did not disclose his net worth, provide a comprehensive list of his assets, or explain how he has been paying his significant living expenses. [T]he affidavits describe[d] the aggregate balances of bank accounts, enumerated in the government's submissions, [but did] not clarify whether Boventre has access to other accounts and, if so, their value.

*Id.* Fisch's submission has all the deficiencies of the submission in *Boventre*, and more, because Fisch submitted even less information. Fisch is not entitled to a pretrial hearing on the basis he asserts.

11

Fisch asks the court to abate all proceedings pending the outcome of *United States v. Kaley (Kaley II)*, 677 F.3d 1316 (11th Cir. 2012), *cert. granted*, 133 S.Ct. 1580, 1580 (2013). Before *Kaley II*, the Eleventh Circuit had "reversed the district court's prior order which had concluded that the Kaleys were not entitled to a pretrial evidentiary hearing on their motion to vacate the protective order, and remanded for further proceedings." *Id.* at 1317 (citing *United States v. Kaley (Kaley I)*, 579 F.3d 1246, 1258 (11th Cir. 2009)). "On round two, the district court determined that the Kaleys were entitled to a pretrial, post-restraint hearing, but that the only question to be addressed at the hearing was whether the restrained assets were traceable to or involved in the conduct charged in the indictment. At the hearing, the Kaleys did not present any evidence regarding traceability, and the district court declined to set aside the protective order." *Id.* The question in *Kaley II* was "exactly what the hearing requires." *Id.*

A review of the oral-argument transcript shows that the focus in *Kaley II* was on the propriety of a hearing that probes the evidence in support of the underlying charges. The Supreme Court started from the premise that the defendants' restrained assets were required for them to obtain counsel. The transcript includes the following:

> Justice Scalia: Is this [right to a hearing] only in the case where the person has no other assets, where all of his assets are seized so that he can't . . . hire counsel? Suppose only half of his assets are determined to – or asserted by the government to have been the product of criminal activity, and he has a lot of other money with which he can hire an attorney. Is that a different case? And we're not – that's not before us.
>
> Petitioners: That's not this case.
>
> Justice Scalia: So you have a hearing on whether he has other money, right?
>
> Petitioners: [S]uch a hearing took place in this case, indeed. But nevertheless, the Petitioners . . . did not have sufficient other funds to retain counsel of choice.

12

Transcript of Oral Argument at 6–7, *Kaley v. United States*, No. 12-464 (Oct. 16, 2013), *available at* http://www.supremecourt.gov/oral_arguments/argument_transcripts/12-464_j3ko.pdf. In *Kaley,* the courts did require a showing that the petitioners did not have sufficient unrestrained funds to obtain counsel. It was clear that the defendants had made such a showing. The issue in *Kaley* was whether, after such a showing, the Eleventh Circuit was correct in restricting the probable-cause hearing to evidence about the traceability of the assets to the alleged crimes and preventing the defendants from challenging the factual foundation supporting the grand jury's probable cause determinations. That is not the issue here. Moreover, in *Kaley*, the petitioners made clear that a defendant in their position should be expected to identify counsel of choice and the reasonableness of the fees:

> Petitioner: If the defendant is seeking a particular amount to be unfrozen at the time of the transfer of funds, of course, the court would need to know who the lawyer was and how much the fee was.

*Id.* at 21.

Fisch has not made the required threshold showing that he lacks unrestrained assets to pay counsel that triggers the need for a pretrial hearing. The Supreme Court's decision in *Kaley II* is not likely to affect the outcome of this motion. There is no need to abate pending the outcome of that case.

### III. Conclusion

Fisch's motion for an evidentiary hearing to contest the recording of a *lis pendens* on his real property is denied and the motion to set aside the *lis pendens* is denied.

SIGNED on October 24, 2013, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge