IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § CRIMINAL NO. H-11-722 |
| | § |
| ABRAHAM MOSES FISCH | § |

### ORDER

Malkah Bertman, a third-party petitioner, moves to require the government to pay property taxes, interest, and penalties that have accrued on the Wickford property since the offenses for which her husband, Abraham Moses Fisch, was convicted. (Docket Entry No. 674). Bertman also moves for miscellaneous relief and for reconsideration of the Bank of the Ozarks' third-party claim for accrued interest and attorney's fees. (Docket Entry No. 677). The motions are denied, for the reasons explained below.

**I.      Background**

After Fisch's conviction, the Harris County taxing authorities, the Bank of the Ozarks, and Bertman all petitioned the court under 21 U.S.C. § 853(n) asking for adjudication of their alleged interests in the Wickford property. (Docket Entry Nos. 502, 509, 511, 515, 552). The government agreed that the taxing authorities and the Bank of the Ozarks had "superior interests in the property" and argued that "[i]n the event of sale . . . the delinquent taxes and mortgage payments should be paid out of the gross proceeds." (Docket Entry No. 599, at 3). No party disputed that the Wickford property is "subject to a mortgage" and "to taxes on which the owner is in default." *Id.* After the court granted an interlocutory sale of the Wickford property, the court granted the government's motion to amend the order. (Docket Entry No. 620). The amended interlocutory-sale order states:

> 1. At closing of the sale of 9202 Wickford Drive, Houston, Texas 77024, the following shall be paid out of the gross sales proceeds:

. . .

    b. all ad valorem taxes due and owing on the Wickford Property at the time of closing to the taxing authorities in accordance with the petitions for adjudication of interest filed in the case under Docket Entry Nos. 502 and 552 and the notices of amounts due and owing in Docket Entry Nos. 584 and 587; and

    c. all amounts due and owing to Bank of the Ozarks, successor by merger to OmniBank, N.A., in accordance with the petition filed in this case under Docket Entry No. 511.

    2. The United States shall deposit the remaining proceeds into the registry of the Court until further order of this Court.

(Docket Entry No. 620).

## II.    Bertman's Motion to Deny the Taxing Authorities' Claims

Bertman moved to deny the taxing authorities' claims, arguing that the Harris County taxing authorities have failed to establish an interest under 21 U.S.C. § 853(n)(6) in taxes claimed for 2013 to 2016. (Docket Entry No. 674 at 2). She argues that although the property was forfeited to the government in 2015, (Docket Entry No. 471), the relation-back doctrine means that the government's interest vested when the offenses occurred between 2006 and 2010. *Id.* Bertman asserts that because the government's interest in the property vested before 2013, the taxing authorities cannot claim an interest in taxes from 2013 or later. She also asserts that the taxing authorities do not fall into the "bona fide purchasers" exception of § 853(n)(6)(B). *Id.*

Bertman asserts that the taxing authorities had constructive notice that the property was subject to forfeiture because the government recorded a *lis pendens* claiming an interest in the property in 2011. *Id.* at 3. She cites to a recent Sixth Circuit case, *United States v. Hall*, 877 F.3d 676, (6th Cir. 2017), in which the government represented that it had a "'pattern of practice of always paying'" forfeited property accrued taxes, "regardless of whether a taxing authority files a claim asserting its interest under 21 U.S.C. § 853(n)." *Id.* at 679. Bertman argues that the

government's position in *Hall* should apply to all forfeiture proceedings. (Docket Entry No. 674 at 3).

The government argues that the relation-back doctrine does not automatically vest and perfect title to property in the United States. (Docket Entry No. 675 at 2). It argues that title to the property has not been perfected and that taxes continued to accrue because there was no final order of forfeiture. The government recognizes the taxing authorities' superior interest under § 853(n)(6)(A) "because the Taxing Authorities' continuing lien renews annually and always runs with the land." (Docket Entry No. 675 at 4).

The court ordered forfeiture on October 28, 2015, (Docket Entry No. 470), and amended the order to include the Wickford property on October 30, 2015, (Docket Entry No. 471). The relation-back statute provides that "[a]ll right, title, and interest in [forfeited property] vests in the United States upon the commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 853(c). The government's interest in the Wickford property vested before 2013, when Fisch committed the acts giving rise to the forfeiture. But the government's interest in the Wickford property is not undivided. When Bertman petitioned the court for a hearing to adjudicate the validity of her interest in the property, the government did not dispute that she had a one-half interest in the property. (Docket Entry No. 599 at 2); *see United States v. Elashi*, 789 F.3d 547, 549 (5th Cir. 2015). Bertman's interest in the Wickford property was not forfeited.

The court also agreed with the government that the Bank of the Ozarks and the taxing authorities have superior interests in the property. (Docket Entry No. 599 at 3). Section 853(n)(6) provides:

> (6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that--

> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(6).

The government concedes that the taxing authorities do not fall under the second category. The government is correct in stating that the first category does apply because the taxing authorities' tax lien is superior to Bertman's interest in the Wickford property. TEX. TAX CODE § 32.05.

Bertman's argument that she does not have to pay taxes, interest, and penalties on the Wickford property because it was forfeited to the government is unpersuasive. (Docket Entry No. 674 at 4). The entirety of the Wickford property was not forfeited to the government. Bertman's remaining interest is inferior to the taxing authorities' interest. Bertman must pay the portion, relative to her interest in the Wickford property, of the taxes, interest, and penalties claimed by the taxing authorities for tax years 2013 to 2016.

### III. Bertman's Motion to Reconsider the Bank of the Ozarks' Claim

Bertman also filed a motion to reconsider the Bank of the Ozarks' interest and attorney's fees claim. (Docket Entry No. 677). She argues that the Bank has not established that it is entitled to $45,377.80 in interest and $38,875.00 in attorney's fees. *Id.* at 1; (Docket Entry No. 619-2). She also argues that the Bank's claim is limited to interest and attorney's fees that accrued on the original house note before the *lis pendens* was recorded in October 2011. (Docket Entry No. 677 at 2–3).

Bertman argues that the Bank was not a "bona fide purchaser" under § 853 after the *lis pendens* was recorded and is barred from claiming any interest or attorney's fees generated under the Bank's post-2011 modification and extension agreements. *Id.*

The government argues that it has forfeited Fisch's rights in the Wickford property, not Bertman's. (Docket Entry No. 678 at 4). According to the government, Bertman has a one-half community property interest and a separate $200,000 property interest in the Wickford property. *Id.*

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration. *See St. Paul Mercury Ins. Co. v. Fair Grounds Corp.*, 123 F.3d 336, 339 (5th Cir. 1997) ("[T]he Federal Rules of Civil Procedure do not recognize a general motion for reconsideration."). A court retains the power to revise an interlocutory order before entering judgment adjudicating the parties' claims, rights, or liabilities. FED. R. CIV. P. 54(b). A motion that asks the court to change an order or judgment is generally considered a motion to alter or amend under Rule 59(e). *T-M Vacuum Products, Inc. v. TAISC, Inc.*, 2008 WL 2785636 at *2 (S.D. Tex. July 16, 2008). A Rule 59(e) motion "calls into question the correctness of a judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004) (citing *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)). A Rule 59(e) motion "'must clearly establish either a manifest error of law or fact or must present newly discovered evidence' and 'cannot be used to raise arguments which could, and should, have been made before the judgment issued.'" *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863–64 (5th Cir. 2003) (quoting *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). Changing an order or judgment under Rule 59(e) is an "extraordinary remedy" that courts should use sparingly. *Templet*, 367 F.3d at 479; *see also* 11 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 124 (2d ed. 1995). The Rule 59(e) standard "favors denial of motions to alter or amend a judgment." *S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606,

611 (5th Cir. 1993). A motion to reconsider may not be used to relitigate matters or to raise arguments or present evidence that could have been raised before the entry of the judgment or order. 11 WRIGHT & MILLER § 2810.1 at 127–28 (footnotes omitted).

The government moved to amend the order for interlocutory sale of the Wickford property to recognize the Bank of the Ozarks' claims. (Docket Entry No. 619 at 3). It included an exhibit showing the net payoff of the house note owed to the Bank of the Ozarks. (Docket Entry No. 619-2). The court granted the government's motion on May 12, 2017. (Docket Entry No. 620). Fisch and Bertman then objected to the payment of attorney's fees and costs from the proceeds of the interlocutory sale. (Docket Entry No. 657). On October 30, 2017, the court denied Fisch's and Bertman's motion, affirmed the amended interlocutory-sale order, and held that the Bank of the Ozarks may recover its contractually guaranteed attorney's fees from the proceeds of the interlocutory sale. (Docket Entry Nos. 620, 669). Bertman had an opportunity to raise arguments about the Bank of the Ozarks' claims for interest and attorney's fees when she objected to paying the attorney's fees in October, 2017. (Docket Entry No. 657). She cannot now relitigate the same matters or raise arguments that she did not raise before the amended interlocutory-sale order was affirmed. 11 WRIGHT & MILLER § 2810.1 at 127–28 (footnotes omitted).

Bertman's argument that the Bank of the Ozarks "should be required to account for all interest and attorney fees it claims has accrued on the original note identifying all amounts which accrued on or before October 28, 2011 when the *lis pendens* was recorded and any amounts it claims accrued by virtue of the second and third loan modifications," is unpersuasive for the same reasons that Bertman's motion to deny the taxing authorities' claims is unpersuasive. (Docket Entry No. 677 at 2–3). Bertman's interest remains inferior to the Bank's interest. Bertman must pay the portion,

relative to her interest in the Wickford property, of the amount claimed by the Bank of the Ozarks, including amounts claimed after the *lis pendens* was recorded.

## IV. Bertman's Motion for Miscellaneous Relief

Bertman asks the court to order the government "to advise the court and parties regarding the status of the sale," and "order that [Bertman] be paid her separate property contribution to the Wickford property in the amount of $200,000 . . . without regard to resolution of any other Third Party claim and without waiting to calculate her community share of the sale proceeds." (Docket Entry No. 677 at 5). Bertman asserts that the government caused delays by waiting to ask Bertman to execute a revised deed after issues arose with the original quitclaim deed, and that these delays have deprived Bertman and the Bank of the Ozarks of the use and enjoyment of their shares of the interlocutory-sale proceeds. *Id.* at 4–5.

Bertman's first request is moot because the government provided an updated status of the interlocutory sale in its response to Bertman's motion. (Docket Entry No. 678). Bertman's second request is denied. As the government notes, Bertman has submitted many filings, and they have significantly contributed to the delay of the interlocutory sale. (Docket Entry No. 678 at 2–3). The process described in the amended interlocutory-sale order remains in place. (Docket Entry No. 620). At the closing of the Wickford property sale, the taxing authorities and the Bank of the Ozarks will be paid out of the gross sales proceeds. *Id.* at 2. The remaining proceeds will be deposited into the court's registry until further order. *Id.*

## V. Conclusion

Bertman's motion to deny the taxing authorities' claims, (Docket Entry No. 674), and her motion for miscellaneous relief and for reconsideration of the Bank of the Ozarks' third-party claim for accrued interest and attorney's fees, (Docket Entry No. 677), are denied.

SIGNED on March 28, 2018, at Houston, Texas.

                                                                       Lee H. Rosenthal  
                                                           Chief United States District Judge